IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TENNYSON BENDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2:09cv789-CSC |
| | ) | [WO] |
| POLICE CHIEF A.D. BAYLOR, MPD, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

The plaintiff, Tennyson Bender, files this *pro se* 42 U.S.C. § 1983 complaint for damages against former Montgomery Chief of Police A. D. Baylor, Warden Levan Thomas, Randy Goniotakis,[1] and Montgomery City Police officers A.D. Gorum, R.A. Gibson, and J.D. Ezell. The plaintiff claims in the complaint, as amended, that the defendant police officers used excessive force when they employed a police dog to effect his arrest on February 9, 2009. The plaintiff further claims that defendant Baylor is responsible for the alleged unconstitutional behavior of his subordinate officers during their apprehension and arrest of him, that defendant Thomas failed to investigate the facts surrounding the plaintiff's apprehension and arrest, and that defendant Goniotakis initiated an erroneous escape charge against the plaintiff which led to the incident made the subject of this action. (Docs. # 1, 12, 35.)

---

[1] The plaintiff erroneously identified this defendant as Randy "Conlotakis."

In accordance with the orders of the court, the defendants filed answers, special reports, and supporting evidentiary material in response to the allegations contained in the complaint and amended complaint. The court then informed the plaintiff that the defendants' special reports may, at any time, be treated as motions for summary judgment, and the court explained to the plaintiff the proper manner in which to respond to a motion for summary judgment. The plaintiff filed responses to the special reports filed by the defendants.

Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. This case is now pending before the court on the defendants' motions for summary judgment. Upon consideration of such motions, the evidentiary materials filed in support thereof, and the plaintiff's opposition to the motion, the court concludes that the defendants' motions for summary judgment are due to be granted in part and denied in part.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][2] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th

---

[2] Effective December 1, 2010, the language of Rule 56(a) was amended. The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

Cir. 2007) (per curiam) (citation omitted); FED.R.CIV.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the movant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine [dispute] for trial."). A genuine dispute of material fact exists when the nonmoving party produces

evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

To survive the movant's properly supported motion for summary judgment, a party is required to produce "sufficient [favorable] evidence" "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*. Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Hence, when a nonmoving party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

For summary judgment purposes, only disputes involving material facts are relevant.

*United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).  However,

if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, the plaintiff has demonstrated genuine disputes of material facts sufficient to preclude entry of summary judgment on his excessive force claim against Defendants Ezell, Gorum and Gibson. Defendants Baylor, Thomas, and Goniotakis, however, are entitled to summary judgment on each of the claims lodged against them by the plaintiff.

## II. FACTS[3]

On February 9, 2009, the plaintiff was an inmate at the Frank Lee Youth Center, in Deatsville, Alabama.[4] He worked as a van driver for the Draper Garage located at the Draper

---

[3] At this stage of the proceedings, this court takes the facts alleged by Bender as true and construes them in the light most favorable to him. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) (citations omitted) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," ... and 'resolve all reasonable doubts about the facts in favor of the non-movant.' ... Moreover, the court must avoid weighing conflicting evidence or making credibility determinations....").
The court makes no factual findings, and the actual facts may be different than those stated here.

[4] During the pendency of this action the plaintiff was released from custody.

Correctional Facility in Elmore, Alabama. His duties included transporting inmates to job sites and picking up parts for the Draper Garage. (Doc. # 1, Ex. 1, Bender Aff.)

On February 9, 2009, Bender was going to pick up an inmate from a job site when he was told that the inmate had been picked up by another driver. He, therefore, headed back to the Draper Garage. En route, Bender noticed that a police officer had pulled up behind him and "flagged" him for no apparent reason. Because he was in a deserted area, Bender kept driving until he reached a place where he could pull over close to his cousin's house. He exited the van and ran towards his cousin's house. Before Bender got to the house, defendant Gibson used a taser on him. Bender fell to the ground and urinated and defecated on himself as a result of the taser shock. He was then handcuffed behind his back by the officers and left laying on the ground on his stomach. As he lay on the ground shaking, officer Ezell released his canine and allowed the dog to attack him while officers Gibson and Gorum watched. The officers eventually released the dog from the plaintiff, and Bender was transported to the hospital where he was treated for multiple dog bite wounds. (*Id*.)

### III.  DISCUSSION

A.   **Introduction.** The plaintiff has sued former Police Chief A.D. Baylor, Warden Levan Thomas, Randy Goniotakis, and officers Gorum, Gibson and Ezell under 42 U.S.C. § 1983. No substantive rights are created by Section 1983; it merely provides a remedy for deprivations of federal rights created elsewhere. *Wideman v. Shallowford Cmty Hospital, Inc.*, 826 F.2d 1030 (11th Cir. 1987). To be successful on § 1983 claim, a plaintiff must

establish that he suffered a deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States and that the act or omission causing the deprivation was committed by a person acting under color of state law. *Id.* "[I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527 (1981). Thus, in order to prevail, the plaintiff must demonstrate that he was "deprived . . . of a right secured under the Constitution or federal law." *Willis v. University Health Servs., Inc.,* 993 F.2d 837, 840 (11th Cir. 1993). Bender alleges that the defendants violated his Fourth and Fourteenth Amendment right to be free from excessive force.[5] Thus, the plaintiff has sufficiently alleged a constitutional violation.

## B. Former Police Chief Baylor, Warden Thomas and Randy Goniotakis.

The plaintiff sues former Police Chief Baylor for the alleged actions of the police officers,

---

[5] While the facts indicate that Bender had already been "'seized' and, for all intents and purposes, arrested at the time of the alleged abuses," it is clear that he had not yet acquired the status of a pretrial detainee. *See Calhoun v. Thomas*, 360 F. Supp. 2d 1264, 1271-72 (M.D. Ala. 2005). Bender was not under a formal arrest at the time the alleged use of force occurred and had yet to be booked on the alleged escape charge. In addition, he had not made an initial appearance before a judge. Thus, the alleged application of excessive force in this case occurred while Bender was in a "legal twilight zone." *Calhoun, supra.* An analysis under the Fourth Amendment is appropriate in post-seizure, pre-detention allegations of excessive force. *Id.* at 1274. Consequently, the Fourth Amendment is the specific constitutional right allegedly infringed by the challenged application of force in this case. *Id. See also Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (analyzing plaintiff's claim that she was subjected to the use of excessive force during a ride to the jail under the Fourth Amendment).

The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force. *See Graham v. Conner*, 490 U.S. 386, 394-95 (1989).

Warden Thomas for allegedly failing to investigate the use of excessive force against him, and Draper Garage employee Randy Goniotakis for allegedly issuing the erroneous escape report against him.

The court first discusses the claims against former Police Chief Baylor. A plaintiff seeking to recover money damages against a person in their official capacity "must look to the government entity itself." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985); *see also, Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999); *Vineyard v. County of Murray, Georgia*, 990 F.2d 1207, 1210 n.3 (11th Cir. 1993); *Owens v. Fulton County*, 877 F.2d 947, 951 n.5 (11th Cir. 1989) ("For liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents."). Thus, because the proper defendant in official action claims is the local government entity, the claims against defendant Baylor in his official capacities are due to be dismissed.

The court next turns to the claims against Chief Baylor and Warden Thomas in their supervisory capacities. Neither Bender's complaint, as amended, nor any evidentiary materials show that Chief Baylor or Warden Thomas had anything to do with any harm alleged by Bender. Thus, Chief Baylor is sued solely due to his position as former Chief of Police for the City of Montgomery and Warden Thomas is sued solely due to his position as Warden of Frank Lee Youth Center. However, the law is well settle that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Miller v. King*, 384 F.3d 1248, 1261 (11th

9

Cir. 2004); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability). Thus, Chief Baylor and Warden Thomas can be held liable in this case only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation." *Cotton v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted).

Bender does not allege that Chief Baylor or Warden Thomas personally participated in the actions about which he complains. Additionally, Bender fails to present any facts which indicate a causal relationship between an action undertaken or policy enacted by these defendants and the alleged constitutional deprivation. A supervisory official "may be liable only for implementing a policy that is 'itself [ ] a repudiation of constitutional rights' and 'the moving force of the constitutional violation.' *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)." *Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2006). Consequently, the claims against these defendants lack an arguable basis in law and therefore are due to be dismissed.

Although supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability, *Gray*, *supra*, supervisors can be held liable for subordinates' constitutional violations on the basis of supervisory liability under 42 U.S.C. § 1983. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Supervisory liability under § 1983 occurs "when the supervisor personally

participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Id.* A causal connection may be established when: (1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so. *Mathews v. Crosby,* 480 F.3d 1265, 1270 (11th Cir. 2007); *Cottone*, 326 F.3d at 1360. Deprivations that constitute wide spread abuse sufficient to constitute notice to the supervising official must be "obvious, flagrant, rampant and of continued duration rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

Bender concedes that neither Baylor nor Thomas were involved in the attack against him by the police dog. Bender also fails to present any evidence indicating that there is a history of widespread abuse which placed Baylor or Thomas on notice of a need to stop an alleged deprivation, that their customs or policies resulted in deliberate indifference to Bender's constitutional rights, or that they directed subordinates to act unlawfully or failed to stop them from doing so. Moreover, it is clear that Baylor and Thomas were not in any way involved with the actions about which Bender complains and that these defendants are being sued based on their administrative positions. Thus, the defendants' motion for

summary judgment are due to be granted.

Furthermore, to prevail against Baylor, Thomas or Goniotakis in their individual capacities, the plaintiff must show that these defendants were personally involved in acts or omissions that resulted in the constitutional deprivation. *Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995). The language of § 1983 plainly requires proof of an affirmative causal connection between the actions taken by a defendant and the constitutional deprivation. *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 990 (11th Cir. 1995). Although Randy Goniotakis is named in the complaint as a defendant, Bender does not allege that Goniotakis took any action against him as it relates to the attack by the police dog. The plaintiff has presented no facts from which the court could conclude that there is a genuine issue of material fact regarding whether Chief Baylor, Warden Thomas or Randy Goniotakis were involved in this incident. The plaintiff has presented no facts that even remotely connect or involve these defendants with the actions of officer Ezell and his police dog. In view of the foregoing, the court concludes that the motions for summary judgment with respect to the plaintiff's claims against former Police Chief Baylor, Warden Thomas and Randy Goniotakis are due to be granted.

**C. The Excessive Force Claim**. Bender sues defendant Ezell alleging that Ezell subjected him to excessive force when he used his police dog to attack and apprehend the plaintiff. Bender also alleges that defendants Gibson and Gorum violated his right to be free from excessive force by failing to intervene and stop the attack as Bender was already

restrained and lying on the ground, pleading for help, when the police dog attacked him. The defendants deny that their actions amounted to the use of excessive force under the circumstances and they assert the defense of qualified immunity. *See* Docs. # 1, 35, 39.

*1. Official Capacity Claims.* To the extent that Bender sues these defendants in their official capacities, he is entitled to no relief. A suit against a party in his or her official capacity is the same as a suit against the governmental entity that the individual employee represents. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). Governmental entities may be liable when the alleged constitutional violations resulted from the execution of the policy or custom of the governmental entity. *See Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978). Bender has neither alleged nor come forward with any evidence that the governmental entity that the defendants represent had a custom or policy which resulted in the wrongs asserted in the complaint. Thus, these defendants are entitled to summary judgment in their official capacities with regard to the plaintiff's excessive force and failure to protect claims.

*2. Individual Capacity Claims.* Defendants Ezell, Gibson and Gorum all assert that they are entitled to summary judgment on the plaintiff's excessive force claims against them.

> To be entitled to judgment as a matter of law, [the defendants] must show that Plaintiff failed to produce substantial evidence such that a reasonable jury could find that the amount of force used to arrest Plaintiff was unreasonable and thus, a violation of the Fourth Amendment's prohibition on the use of excessive force by law enforcement officers.

*Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000).

As explained, Bender alleges he was handcuffed and laying on the ground when defendant Ezell released his police dog to effectuate Bender's arrest. Defendants Gibson, Gorum, and Ezell (collectively "Defendants") give a diametrically different account of the events. According to the officers, on February 9, 2009, between 11:00 p.m. and 12:00 a.m., Montgomery Police department dispatch advised that the Alabama Department of Corrections officials had notified the Montgomery Police that the plaintiff had escaped from Draper Correctional Facility in a white 2000 Dodge van. Dispatch further advised that the plaintiff may be in the area of Capitol Hill Health Care. Defendant Gibson responded to the area and noticed a white van which he began to follow. Defendant Gibson activated his emergency lights but the van did not stop; instead, it ran a stop sign. Bender continued to drive the van through a neighborhood in the area of Capitol Heights making various turns until finally he pulled over, jumped from the van, and fled on foot. (Doc. # 39, Ex. 2, Gibson Aff.)

While Gibson was pursuing the plaintiff, Defendant Gorum responded to the chase and fell in behind Defendant Gibson. Defendant Ezell radioed Dispatch that he would respond to provide assistance. After the plaintiff fled from the van, Defendant Gibson chased the plaintiff on foot. Refusing Defendant Gibson's verbal commands to stop and surrender, the plaintiff jumped a fence landing in the backyard of a residence located on Greenville Street. Defendant Gibson, still on foot, pursued the plaintiff over the fence, deploying his taser as he followed. The taser hit the plaintiff but as Defendant Gibson rolled over the

14

fence, Gibson fell on the taser leads pulling them from the plaintiff's back.[6]

The defendants contend that Bender got up and continued running. Defendant Ezell and his police dog approached the plaintiff from the side of the Greenville Street residence, and gave the standard K-9 warning three times ("police officer, stop or I'll send my dog"). The defendants assert that the plaintiff continued to attempt to elude them. Defendant Ezell then released his dog, Viggo, who apprehended the plaintiff. (Doc. #39, Gorum, Gibson, and Ezell Affs.)

Plainly, there are factual disputes concerning the incident including whether there was a need for the use of force and whether the force used was reasonable or excessive under the circumstances. Taking the plaintiff's version of the facts as true, as the court is required to do at this juncture, a reasonable jury could conclude that Ezell used an unreasonable amount of force when he released his police dog and allowed the dog to bite Bender[7] when Bender was handcuffed, laying on his stomach, and offering no resistance, and thereby violated the Fourth Amendment. *Id.* Thus, summary judgment is due to be denied.

The defendants also assert that they are entitled to qualified immunity for their actions. Qualified immunity protects government officials from liability for civil damages arising out of the government officials performing their discretionary functions as long as their conduct

---

[6] Bender does not challenge Gibson's initial use of force with the taser. (Doc. # 46 at 4). He only challenges the use of force involving the police dog. (*Id*.)

[7] It is undisputed that Bender suffered at least some dog bites. However, the parties dispute the severity of those wounds.

15

does not violate clearly established statutory or constitutional rights that a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Priester, supra*; *Rogers v. Miller*, 57 F.3d 986, 988 (11th Cir. 1995). To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). The parties do not dispute that the defendants were acting within the course and scope of their discretionary authority when the incident occurred.

However, genuine disputes of material fact preclude the court from concluding that these defendants are entitled to qualified immunity at this stage in the proceedings. The court has carefully reviewed the briefs and evidentiary submissions of the parties. The court concludes that there are genuine disputes of material facts from which a finder of fact might determine that defendant Ezell used excessive force against the plaintiff when he released his police dog to attack Bender after he was handcuffed and on the ground. These factual disputes preclude summary judgment on both the merits of the case and the issue of qualified immunity because the nature of the dispute precludes the court from determining whether qualified immunity exists. Based on Bender's version of the facts, a reasonable jury could conclude that the force used by Ezell was excessive, unnecessary and disproportionate to the offenses. *See Priester v. City of Riviera Beach, Fla*., 208 F.3d 919 (11th Cir. 2000). If the facts are as Bender alleges, Ezell would not be entitled to immunity because any police officer would know that the law was clearly established that releasing a police dog to attack

a suspect after he was handcuffed, laying on the ground and offering no resistence would violate his constitutional rights and any officer would be know or conclude that his actions were therefore unlawful. *Priester, supra* (finding police officer not entitled to qualified immunity where officer allowed his canine to bite the plaintiff for at least two minutes where plaintiff was suspected of a stealing $20.00 in snacks from a golf shop, immediately submitted to police, did not attempt to resist arrest or flee, and did not pose a threat of bodily harm to police or anyone else); *Edwards v. Shanley*, 666 F.3d 1289 (11th Cir. 2012) (holding that clearly established law does not permit police officers to allow a police dog to attack a person for five to seven minutes when the person is laying face down and not resisting arrest); *Reese v. Herbert*, 527 F.3d 1253, 1274 (11th Cir. 2008) (finding police used excessive force against plaintiff who was suspected of having committed a misdemeanor, did not pose an immediate threat of harm, and was not actively resisting or evading arrest).[8] Under the facts presented by the plaintiff, the court concludes that genuine disputes of material fact exist regarding the need for the use of force and whether the amount of force used was appropriate. *See Priester,* 208 F.3d at 926-27. Based on the forgoing, the motion for summary judgment with respect to the Fourth Amendment claim against defendant Ezell is due to be denied.

---

[8]*See also*, *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) ("In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*. *See Johnson v. Breeden*, __ F.3d __ (11th Cir. 2002). There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. *Id.* The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment. If he has done so, that is the end of the inquiry.")

The plaintiff also alleges that officers Gibson and Gorum failed to intervene when Ezell released his police dog, and did nothing to stop the attack.  The defendants do not address this allegation.  Consequently, if the facts are as Bender alleges, neither Gibson nor Gorum would be entitled to immunity because any police officer would know that the law was clearly established that failing to intervene when another officer released a police dog to attack a suspect when the individual was handcuffed, laying on the ground and offering no resistance would violate his constitutional rights and any officer would be know or conclude that his actions were therefore unlawful.

> That a police officer had a duty to intervene when he witnessed the use of excessive force and had the ability to intervene was clearly established in February 1994.  *See Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986) ("If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983."); *see also*, *Post* [*v. City of Fort Lauderdale*, 7 F.3d 1552,] 1560 [(11th Cir. 1996)] ("A police officer has the duty to intervene when another officer uses excessive force."); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985); *Harris v. Chanclor*, 537 F.2d 203, 206 (5th Cir. 1976).

*Priester*, 208 F.3d at 927.  *See also*, *Edwards*, 666 F.3d at 1298.

The plaintiff alleges, and the defendants do not dispute, that they were present during the incident.  Taking Bender's account as true, the court concludes that genuine disputes of material fact exist regarding whether Gibson and Gorum had the ability to intervene and then failed to do so.  The nature of the disputed facts also precludes the court from determining whether qualified immunity exists for officers Gibson and Gorum.  *See Priester,* 208 F.3d at 927; *Edwards*, 666 F.3d at 1298.  Based on the forgoing, the motion for summary

18

judgment with respect to defendants Gibson and Gorum are also due to be denied.

### IV.  CONCLUSION

Accordingly, it is the ORDERED and ADJUDGED that:

1. Defendants' Baylor, Thomas, Goniotakis's motions for summary judgment (docs. # 20, 23, 28 &30) be and are hereby GRANTED and these defendants be and are hereby DISMISSED as defendants in this action.

2. Defendants Ezell, Gibson and Gorum's motion for summary judgment regarding Bender's excessive force claim against them in their individual capacities (doc. # 39) be and is hereby DENIED;

3. This case be and is hereby set for a scheduling conference on the plaintiff's surviving excessive force claims against Defendants Ezell, Gibson and Gorum on **June 12, 2012**, at 3:00 p.m. in Courtroom 4B, United States Courthouse Complex, One Church Street, Montgomery, Alabama; and

4. The plaintiff's motion for status (doc. # 55) be and is hereby DENIED as moot.

Done this 22nd day of May, 2012.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE